JOSEPH DONOGHUE ET AL. *v.* NANCY A. SHULL.

1. HUSBAND AND WIFE. *Code* 1892, § 2294. *Transfers of property. Suits pending.*

   A transfer of property from a husband to his wife otherwise valid, under Code 1892, § 2294, regulating the subject, is not rendered invalid by the fact that suits were threatened or pending against the husband at the time it was made.

2. SAME. *Fraudulent conveyances. Subsequent creditors. Code* 1892, § 4228.

   Although a transfer of property from a husband to his wife was made with intent to defraud existing creditors of the husband, it is valid as to his subsequent creditors, under Code 1892, § 4228, so providing, unless made to defraud them; and hence it is valid as to a creditor who had knowledge of the transfer, consented thereto, and treated the wife as the real owner of the property so transferred before the husband contracted the debt due to him.

FROM the chancery court of Lowndes county.

HON. JAMES F. McCOOL, Chancellor.

Mrs. Shull, the appellee, was complainant, and Donoghue and others, appellants, were defendants in the court below. From a decree in complainant's favor the defendants appealed to the supreme court.

Complainant charged that in the summer of 1892 her husband, J. G. Shull, and Joseph Donoghue, one of the appellants, entered into a contract to build a steamboat, to be paid for by them and owned by them as partners, one-third to be paid for and owned by J. G. Shull and two-thirds to be paid for and owned by Donoghue, the profits arising from the business to be divided one-third to Shull and two-thirds to Donoghue; that the steamboat was built and named "City of Columbus," and that the boat was run in the Tombigbee and Alabama rivers during the boating seasons of 1892–93 to 1898–99 under this contract, but was entirely controlled by Donoghue;

that in October, 1894, complainant's husband, J. G. Shull, in consideration of $1,800, sold to complainant his interest in·said steamboat, which sale was evidenced by written contract, duly recorded; that at the close of the boating season of 1898–99, under a contract with Donoghue and others, stockholders in the White Star Line Steamboat Company, the steamboat City of Columbus was dismantled and sold, and the owners received as compensation twenty shares of stock in the White Star Line Steamboat Company, of the par value of $100 each, one-third of the shares to be the interest of complainant and two-thirds the interest of Donoghue; that during the time the City of Columbus was in service it made quite a sum of money as profits over and above expenses, all of which were kept by Donoghue; that $1,000 of this money was used, by mutual consent, in purchasing ten shares more in the White Star Line Steamboat Company, making complainant the owner of ten shares of that stock; that over and above the money used in purchasing this stock there was left in the hands of Donoghue the further sum of $1,563.99, the net earnings of the City of Columbus, which had not been accounted for; that since the organization of the White Star Line Steamboat Company dividends had been declared to the stockholders, but by reason of the fact that Donoghue had continued in the sole possession of the books covering the interest of himself and complainant and in possession of the certificates of stock, except six shares, complainant is ignorant as to how much she is entitled to have paid her; that six shares of this stock were issued to complainant, signed by Joseph Donoghue, president, and Newman Cayce, secretary, of said company, on September 18, 1901, upon which a dividend of $120 was paid her May 30, 1902, thus leaving four shares of stock undelivered to her, which she is now entitled to have delivered to her by Donoghue or the White Star Line Steamboat Company; that in December, 1899, her husband borrowed some money, and that Donoghue signed a note as surety for her husband, and·to secure said Donoghue she con-

sented for Donoghue to retain as collateral security four shares
of her stock in the White Star Line Steamboat Company; that
her husband failed to pay the note, and Donoghue was forced
to pay it and the interest on it, but that it was paid with money
belonging to complainant then remaining in the possession of
Donoghue, being the accumulated profits on her interest in the
steamboat City of Columbus; that the four shares of stock had
been thus redeemed, and should be released. Complainant
prays for an accounting between herself and Donoghue of the
business of the City of Columbus since she purchased her hus-
band's interest in the boat, and for the dividends on her stock
in the White Star Line Steamboat Company since its organi-
zation, and for the surrender to her of the four shares of the
stock in that company still withheld from her. Donoghue an-
swered, admitting the execution of the contract with J. G.
Shull, complainant's husband, to build and operate the boat, the
City of Columbus, as alleged in the bill, except that this con-
tract was entered into in 1893 instead of 1892, and alleged
that he paid $216.02 of the one-third agreed to be paid by said
J. G. Shull, and charged that sum to him; admitted that he
controlled and managed the boat all the time it was in business;
denied that he ever had any agreement with Mrs. Shull as the
owner of the City of Columbus, but averred that all his dealings
were with her husband, J. G. Shull. He admitted that there
was an apparent transfer of the interest of J. G. Shull in the
boat, the City of Columbus, about the time alleged in the bill,
but charged that it was not made in good faith, or for any valid
consideration, but that just prior to this transfer said J. G.
Shull came to him and told him that he (Shull) was indebted
in a considerable sum to a party in Columbus, and he feared
his interest in the boat would be seized and sold, and asked
permission to transfer his interest in it to his wife, Mrs. Shull,
to which respondent consented, and that the transfer was after-
wards made to her for that purpose; that J. G. Shull continued
to manage and control the business just as he had done before.

He admitted that the City of Columbus was dismantled and sold, and stock taken in the White Star Line Steamboat Company, as alleged in the bill, but averred that this agreement was made with J. G. Shull, and not with complainant. He admitted that there was a balance in his hands of $1,553.39, after purchasing the ten shares of stock, of profits arising from the business of the City of Columbus, and averred that the one-third interest was the property of J. G. Shull, and was credited on his account. The answer averred that all the time J. G. Shull was in debt to respondent in a considerable amount, and it was agreed and understood that the interest of J. G. Shull in the City of Columbus and in its earnings as represented by the shares of stock in the White Star Line Steamboat Company should be held by respondent as collateral security for his debt, which has never been satisfied; that the thirty shares of stock in the White Star Line Steamboat Company were originally issued to respondent, and so remained in his name until September 18, 1901, at which time respondent directed that six shares of the stock be issued to complainant, the other four shares being still held as security for the indebtedness of J. G. Shull still unpaid. He admitted that he signed the note as surety for J. G. Shull, and admitted that J. G. Shull and complainant executed in writing an assignment of the four shares of stock, as alleged in the bill, to respondent as collateral security, but averred that it was signed by Mrs. Shull because the legal title thereto was in her name. He denied that the money paid by respondent as J. G. Shull's surety had been refunded to him. He admitted that the dividend on the six shares of stock was paid to Mrs. Shull, as alleged in the bill. Respondent made his answer a cross-bill, asking that the four shares of stock still held by him be sold to satisfy the indebtedness of J. G. Shull still due him. J. G. Shull answered, admitting all the material allegations of the bill. Mrs. Shull answered the cross-bill, denying the allegations therein contained. On the bill, cross-bill, and answers considerable testi-

mony was taken, and the chancellor rendered a decree in favor of complainant granting her a decree for part of the money claimed, and ordering the four shares of stock in the White Star Line Steamboat Company to be delivered to her.

*Newman Cayce,* for appellants.

*Thomas J. O'Niell,* for appellee.

TRULY, J., delivered the opinion of the court.

The chancellor found that a valid debt was due and owing by J. G. Shull to Mrs. Shull, his wife, and that the transfer of the interest of the husband in the steamboat City of Columbus was in satisfaction of that indebtedness. Accepting this finding of fact as true, the transfer, which was evidenced by writing, duly acknowledged and recorded as required by § 2294, Code 1892, was not invalidated or rendered fraudulent because of suits threatened or pending against the husband. *Savage* v. *Dowd,* 54 Miss., 732; *Graham* v. *Morgan,* 83 Miss., 601 (35 South. Rep., 874). Appellant cannot be heard now to contend that the interest formerly owned by J. G. Shull should be held liable for the personal debt due him by said Shull. Appellant was aware of the transfer by Shull to appellee at the time it was consummated. He was fully advised with reference thereto, and consented that the property should be transferred. Appellant recognized appellee's title by having a portion of the capital stock reissued in her name and by obtaining from her a written pledge by assignment of other shares of stock to secure a note which he had indorsed for her husband. Conceding that the transfer was in fact made with intent to defraud existing creditors, it was not void as to a subsequent creditor who was cognizant of the whole transaction and had dealt with the wife as the real owner for several years before any debt was contracted with him. Code 1892, § 4228.

*Affirmed.*